NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Jeanette FAZIO,

        Plaintiff,

v.

NEW JERSEY TURNPIKE AUTHORITY,

        Defendant.

Civ. No. 11-3789

OPINION

THOMPSON, U.S.D.J.

    This matter has come before the Court on Defendant New Jersey Turnpike Authority's (NJTA) Motion to Dismiss [docket # 5] for failure to state a claim and upon Plaintiff Jeanette Fazio's Cross-Motion to Amend the Complaint [7]. The Court has decided these motions upon the submissions of the parties and without oral argument pursuant to Fed. R. Civ. P. 78(b). For the following reasons Defendant's motion will be denied and Plaintiff's motion will be granted.

    **I.    BACKGROUND**

    The Court accepts as true for the purposes of deciding this motion all of the well-pleaded facts of the Plaintiff's Amended Complaint. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

    Plaintiff Jeanette Fazio is a former employee of NJTA. (Am. Compl. ¶ 5). While employed at NJTA in 2007, Fazio was diagnosed with a panoply of mental diseases or defects by Dr. Ronald L. Kamm, which included Bipolar Disorder, Major Depressive Disorder, Panic Disorder, Anxiety Disorder, Seasonal Affective Disorder, Mental Confusion, and "somnolence of unknown origin." (*Id.* ¶ 6). Dr. Kamm was selected as Fazio's treating physician by Defendant. (*Id.*). As a result of this diagnosis, Fazio was placed out of work by NJTA on

1

temporary disability.  (*Id.* ¶ 7).  During the course of 2007, Fazio was under treatment for all of these medical conditions.  (*Id.*).  Then, in September 2008, Dr. Kamm determined that Fazio was well enough to return to work.  (*Id.*).  He recommended that Plaintiff remain at the Keyport toll location and be permitted to work the 2 p.m. to 10 p.m. shift in order to accommodate Plaintiff's mental conditions.  (*Id.*).

In March 2010, however, Plaintiff was again placed out of work by NJTA due to her mental afflictions.  (*Id.* ¶ 8).  All of Plaintiff's previous diagnoses continued.  (*Id.*).  Dr. Kamm at this time recommended that Ms. Fazio adjust her pharmacological treatment and continue to see a social worker.  (*Id.*).  Two months later, in May 2010, Dr. Kamm "made a finding that Ms. Fazio's Recurrent Depressive Disorder and her Anxiety Disorder had both worsened since April."  (*Id.*).  Dr. Kamm continued to keep Plaintiff out of work until July of 2010.  (*Id.*).  During this time period, Dr. Kamm reported each evaluation and treatment of Fazio to the Defendant.  (*Id.*).

Also occurring in March of 2010, Plaintiff applied for leave under the Family and Medical Leave Act.  (*Id.* ¶ 9).  But in May of that year, Defendant contacted Plaintiff to demand that Plaintiff return to work.  (*Id.* ¶ 10).  At that time, Fazio informed the Defendant that she was out of work due to the disability, "requested an opportunity to take the necessary steps to receive her necessary treatment[,] and [further requested] to preserve and protect her continued employment with [NJTA]."  (*Id.*).  NJTA ignored these requests and "made no effort to even discuss [P]laintiff's condition, treatment, or [the] requested and necessary accommodations with [P]laintiff or any of her treating professionals."  (*Id.*).  Defendant brought disciplinary charges against Fazio in July 2010 because of her absence from work.  (*Id.* ¶ 11).  On July 12, 2010, Fazio "expressly asked to keep her job," and "[h]er treating therapist also advised [D]efendant

that [P]laintiff did not want to lose her position." (*Id.* ¶ 12). Finally, on July 29, 2010, Defendant terminated Plaintiff's employment. (*Id.* ¶13).

Based on these events Plaintiff has brought suit under three separate statutes. First, Plaintiff brings suit under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12101, *et seq.*, on the basis of discrimination, failure to accommodate, and retaliation for asking for reasonable accommodation. Second, claims are brought under the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1, *et seq.*, on the basis of discrimination and failure to provide reasonable accommodation. Finally, Plaintiff brings claims under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2611, *et seq.*, for improperly denying her leave and for retaliating against her for seeking to take leave under the FMLA.

## II.     LEGAL STANDARD

### a. Leave to Amend

It has been the accepted and encouraged policy that courts should liberally grant leave to amend pleadings when justice so requires. *See* Fed. R. Civ. P. 15(a); *see also Foman v. Davis,* 371 U.S. 178, 182 (1962); *Dole v. Arco Chem. Co.,* 921 F.2d 484 (3d Cir. 1990). The determination of a motion to amend falls within the discretion of the trial court and is guided by Fed. R. Civ. P. 15(a). *Foman v. Davis,* 371 U.S. 178, 182 (1962).

When the movant's request to amend is "a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.* Therefore, before dismissing a complaint under Rule 12(b)(6), "a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002)). An amended complaint is "futile" if it would still fail to state a claim for relief under the Rule

3

12(b)(6) standard. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997).

In this case, Plaintiff has cross-moved to amend her Complaint. Defendant, however, argues that portions of the proposed Amended Complaint still fail to state a claim. Therefore, the Court must determine whether the Amended Complaint fails to state a claim upon which relief may be granted.

> b. Motion to Dismiss

On a motion to dismiss for failure to state a claim, a "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1947 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). But, the court should disregard any conclusory allegations proffered in the complaint. *Id.* Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must next determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. at 1949). This requires more than a mere allegation of an entitlement to relief. *Id.* "A complaint has to 'show' such an entitlement with its facts." *Id.* A claim is only plausible if the facts pleaded allow a court reasonably to infer that the defendant is liable for the misconduct alleged. *Id.* at 210 (quoting *Iqbal*, 129 S. Ct. at 1948). Facts suggesting the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 194).

### III. DISCUSSION

There are three separate counts contained in the Amended Complaint, all of which raise separate and distinct legal issues. Initially, Defendant argued that all three counts of the Complaint must be dismissed for various reasons. In its reply brief, however, Defendant has conceded that several of the defects in Plaintiff's original Complaint have been rectified in the proposed Amended Complaint. (Def.'s Reply Br. 1). In its reply brief, Defendants now argue that Plaintiff's proposed amendments would be futile, in part, for two reasons. First, Defendant argues that Plaintiff's retaliation claims under the ADA in Count I of the Amended Complaint must be dismissed because she has failed to exhaust her administrative remedies. Second, Defendant argues that Plaintiff's FMLA claims, even as amended, must be dismissed because she "failed to plead facts plausibly showing that [she] was entitled to the benefits under the FMLA which allegedly were denied." (*Id.* 6). The Court will address each of these arguments in turn.

    a.   Count I- ADA Claims

In order to state a prima facie claim for relief under the ADA, a plaintiff must allege that he or she (1) has a "disability," (2) that he or she is a "qualified individual" under the act, and (3) he or she has suffered an "adverse employment decision" as a result of the "disability." *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001) (quoting *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 142 (3d Cir. 1998) (en banc)). In order for a plaintiff to bring a claim under the ADA, however, he or she must first exhaust the administrative remedies by filing a "charge" with the Equal Employment Opportunity Commission (EEOC). *See* 42 U.S.C. § 2000e-5(b); 42 U.S.C. § 12117(a); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). Failure to exhaust administrative remedies requires a district court to dismiss ADA claims on a

defendant's motion brought pursuant to Fed. R. Civ. P. 12(b)(6).  *See generally Buck*, 452 F.3d 256.

In paragraph 21 of the Amended Complaint, Plaintiff states that "Ms. Fazio has filed a Charge of Discrimination with the US [*sic*] [EEOC]" in regard to the facts at issue in this case. (Compl. ¶ 21).  Because the Charge of Discrimination is referred to in the proposed Amended Complaint, and because it is a vital part of Plaintiff's ADA cause of action, it is properly considered by the Court on a motion to dismiss for failure to state a claim.  *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." (citations omitted)); *see also Ruddy v. U.S.P.S.*, No. 11-1906, 2011 U.S. App. LEXIS 25797, *8 (3d Cir. Dec. 23, 2011) ("A court may also consider 'any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.'" (quoting *Buck*, 452 F.3d at 260)).  Defendant argues that a retaliation claim was not "fairly within the scope" of the EEOC complaint in this case; instead, only discrimination claims were addressed by the EEOC.

As support for its argument, Defendant relies on *Waiters v. Parsons*, 729 F.2d 233 (3d Cir. 1984).  There, the United States Court of Appeals for the Third Circuit addressed whether a plaintiff must re-exhaust his or her administrative remedies for actions by an employer that occur subsequent to the filing of an EEOC complaint alleging age discrimination.  The court held that "[t]he relevant test in determining whether [a plaintiff is] required to exhaust her administrative remedies . . . is whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom."  *Waiters*, 729 F.2d at 237. Specifically within the context of the ADA, the Third Circuit has stated that an "ensuing

6

suit is limited to claims that are within the scope of the initial administrative charge." *Williams v. E. Orange Cmty. Charter Sch.*, 396 F. App'x 895, 897 (3d Cir. 2010) (citing *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)). The scope of an initial administrative charge is "defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . ." *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976) (citing *Gamble v. Birmingham S. R.R. Co.*, 514 F.2d 678 (5th Cir. 1975); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970)), *cert. denied*, 429 U.S. 1041 (1977), *reh'g denied*, 430 U.S. 911 (1977). This standard is directed toward what the EEOC should reasonably investigate based on the facts presented to it, and it "does not necessarily preclude a plaintiff from asserting a claim for the mere failure to check a box on an EEOC Charge Form . . . ." *Barzanty v. Verizon Pa., Inc.*, 361 F. App'x 411, 414 (3d Cir. 2010); *see also Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208, 1212 (3d Cir. 1984).

Upon review of the Charge of Discrimination, (Lidon Cert., Ex. A), it appears to the Court that Plaintiff's retaliation claim under the ADA is within its scope. Although the same essential facts that appear in the Amended Complaint are contained in the Charge of Discrimination, Defendant seems to argue that because Plaintiff did not check the box for "retaliation" on her EEOC charge, this claim was not properly within the scope of the EEOC investigation. The Court does not agree. Because the facts contained in the EEOC charge and the Amended Complaint are substantially the same, it is fair to say that the EEOC would reasonably be expected to investigate whether Defendant retaliated against Plaintiff for taking leave—even if Plaintiff did not specifically mention the word retaliation or check the correct box. As a district court in the Western District of Pennsylvania has stated, the standard announced by the Third Circuit "does not preclude a plaintiff from asserting a claim for failing to

7

check a box on the EEOC form . . . ." *Bonant v. Monark Student Transp. Corp.*, No. 10-1654, 2011 U.S. Dist. LEXIS 112619, *6 (W.D. Pa. Sept. 30, 2011).

Moreover, the Third Circuit has held that it is an abuse of discretion not to permit leave to amend in a situation nearly identical to the facts of this case. In *Howze v. Jones & Laughlin Steel Corp.*, the Third Circuit held that a retaliation claim based on substantially the same facts as those investigated by the EEOC was fairly within the scope of the initial administrative proceeding. *Howze*, 750 F.2d at 1212. Importantly, "[w]hether the actual EEOC investigation uncovered any evidence of retaliation is of no consequence." *Id.* An EEOC charge or the subsequent investigation does not set "an outer limit on the scope of the civil complaint," but rather, additional charges may be adjudicated "if they are reasonably within the scope of the claimants [*sic*] original charges and if a reasonable investigation by the EEOC would have encompassed the new claims." *Id.* Because the EEOC charge and the proposed amended complaint were based on the same set of facts, and because the proposed amendment sought to assert only a new theory of liability (i.e., retaliation for activities on behalf of the J&L Black Caucus, as opposed to merely discrimination on the basis of race), it was an abuse of discretion for the district court to deny leave to file an amended complaint to include the alternate theory. *Id.*

For these reasons, Plaintiff has properly exhausted her administrative remedies, and she has therefore properly stated a claim under the ADA.

  b. <u>Count III- FMLA Claims</u>

There are two main theories of liability under the FMLA raised in this case. First, Plaintiff argues that she was improperly denied leave under the FMLA. Second, Fazio argues that she was retaliated against for requesting to take FMLA leave. Firing an employee for

validly requesting FMLA leave may be the basis for either theory of liability. *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009).

To state a claim for improper denial of leave under 29 U.S.C. § 2615(a)(1) of the FMLA, a plaintiff must allege only (1) that he or she was entitled to benefits under the FMLA and (2) that he or she was denied those benefits. *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005) (citing 29 U.S.C. §§ 2612(a), 2614(a)), *cert. denied*, 546 U.S. 876 (2005). In order to state a claim for retaliation, a plaintiff "must show that (1) he invoked his right to FMLA benefits, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his invocation of his rights." *Hayduk v. City of Johnstown*, 386 F. App'x 55, 59–60 (3d Cir. 2010) (citing *Erdman,* 582 F.3d at 509; *Conoshenti v. Pub. Serv. Elec. & Gas Co.,* 364 F.3d 135, 146 (3d Cir. 2004)).

In its reply brief, Defendant argues that the Amended Complaint does not adequately plead facts plausibly showing that Fazio was entitled to leave under the FMLA. If this is true, both of Plaintiff's theories of liability under the FMLA must be dismissed. *See Hayduk*, 386 F. App'x at 60. In order to establish that she was entitled to benefits under the FMLA, Plaintiff must show that she is an "eligible employee" as defined under 29 U.S.C. § 2611(2) and that she took leave "for the intended purposes of leave" as defined under 29 U.S.C. § 2614(a)(1). *Parker v. Verizon Pa., Inc.*, 309 F. App'x 551, 563 (3d Cir. 2009). Specifically, Defendant contends that Plaintiff has not pled sufficient facts that make a plausible showing that she was an "eligible employee" pursuant to § 2611(2)(A)(ii).

As defined under the FMLA, an "eligible employee" is "an employee who has been employed (i) for at least 12 months by the employer with respect to whom leave is requested; **and** (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A) (emphasis added). After reviewing the Amended Complaint,

9

the Court has determined that the following allegations are all of the well-pleaded facts contained in the Amended Complaint that are pertinent to whether Plaintiff was an "eligible employee": (1) Plaintiff was employed with Defendant in September 2008 when she resumed work from a previous leave of absence, (Compl. ¶ 7); (2) Plaintiff's treating physician recommended that she be permitted to work the 2 p.m. to 10 p.m. shift upon her return to work in September 2008, so that difficulty in awakening did not impact her job punctuality, (*id.* ¶ 7); (3) Plaintiff was employed by Defendant in March 2010 when she was again placed on leave due to her numerous mental conditions, (*id.* ¶ 8); (4) Plaintiff was employed with NJTA for all periods relevant to the Amended Complaint, (*id.* ¶¶ 1–2, 17); and (5) Plaintiff had taken FMLA leave on previous occasions, (*id.* ¶ 28). The Court ignores Plaintiff's contention in paragraph 28 of the Amended Complaint that "Ms. Fazio is a protected 'employee' . . . for purposes of applying the [FMLA]" because this statement is a legal conclusion. *See Fowler v. UPMC Shadyside*, 578 F.3d at 210–11.

  Taking these facts into consideration, the Court determines that Plaintiff has not validly pled that she was an "eligible employee" under the FMLA. To begin with, the fact that Plaintiff returned to work in September 2008 and remained an active employee at least until March 2010 satisfies the Court that she was plausibly employed for at least twelve months prior to asking for FMLA leave. Plaintiff, however, has not satisfied the second requirement under § 2611(2)(A). The proposed Amended Complaint has one glaring omission: an allegation that Plaintiff worked 1,250 hours from the period of March 2009 through March 2010.

  The fact that Plaintiff had previously been granted leave under FMLA, along with the fact that she worked for twelve consecutive months from March 2009 through March 2010, makes it possible that Plaintiff worked for at least 1,250 hours in that twelve month period. This is further evidenced by the fact that Plaintiff's treating physician suggested that Fazio be placed

on the 2 p.m. to 10 p.m. shift—a full eight-hour work day. Moreover, because no mention is made in the Amended Complaint that the amount of hours Plaintiff worked per week was any different between the period before her first FMLA leave and the twelve-month period preceding the March 2010 request, it is possible to infer that Plaintiff worked the number of hours required to take a second FMLA leave. The question, however, is whether it is reasonable for the Court to do so. Although these facts make Plaintiff's claim that she is an "eligible employ" possible, whether this contention is "possible" is not the standard; Plaintiff's claims must be "plausible." The plausibility standard of *Iqbal* does not require total certainty. Instead, it is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. The Court, however, cannot engage in mere guesswork.

It would be total conjecture on the part of the Court to infer that because Fazio worked the required number of hours to take FMLA leave during a previous twelve-month period that she must have continued to work the same number of hours during a second twelve-month period. *Cf. Ingrassia v. Cnty. of Sullivan,* 262 F. Supp. 2d 116, 119–20 (S.D.N.Y. 2003) (requiring plaintiff to amend a complaint that alleged 1,250 hours worked in the previous calendar year, but did not allege 1,250 hours worked in the specific 12-month period at issue). Taken together, the facts alleged in the Amended Complaint do not "nudge[] [Plaintiff's] claims against [NJTA] 'across the line from conceivable to plausible.'" *Fowler*, 578 F.3d at 212 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It is not clear to the Court, however, that Plaintiff could not make a proper allegation if given a chance to amend. Therefore, the appropriate course of action is to permit Plaintiff an opportunity to make the required changes to her proposed Amended Complaint before officially filing it with the Court. *See Ingrassia*, 262 F. Supp. 2d at 120.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff will be granted leave to file within 20 days an Amended Complaint rectifying the defects as discussed above.  An appropriate order will follow.


                                           */s/ Anne E. Thompson*
                                           ANNE E. THOMPSON, U.S.D.J.

Date: January 10, 2012